IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 1, 2020

**PHILEMON ALEXANDER v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
No. 14-04754       Chris Craft, Judge
_____

**No. W2019-02098-CCA-R3-PC**
_____

This case presents an appeal as of right from the post-conviction court's denial of relief. The Petitioner is serving an eight-year sentence for a jury conviction of theft of property valued at $1,000 or more but less than $10,000.  The Petitioner asserts that Counsel's failure to properly investigate or prepare for trial constitutes the ineffective assistance of counsel.  The Petitioner, however, failed to provide clear and convincing proof at the post-conviction hearing to support his allegations of ineffective assistance of counsel. Therefore, we affirm the post-conviction court's denial of relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and J. ROSS DYER, JJ., joined.

Ernest J. Beasley, Memphis, Tennessee, for the appellant, Philemon Alexander.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie R. Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

The Petitioner's charge arose after he posed as a potential customer at the I-Finance-Auto dealership.  On direct appeal, this court summarized the case as follows:

> [The Petitioner] asked to test drive a red Mustang convertible, and then drove away and never returned the vehicle.  The vehicle's identification number (VIN) was 1FAFP4441YF207067.  The owner testified that the car had a GPS device, but it was turned off within an hour.

The [Petitioner] then sold the vehicle to Ethan Wilkins (Mr. Wilkins). The [Petitioner] met with Mr. Wilkins, Mr. Wilkins' girlfriend, Mr. Wilkins' brother, and Mr. Wilkins' sister. The [Petitioner] gave Mr. Wilkins a false name and bill of sale and told him to present the document at the Department of Motor Vehicles (DMV) to receive the title to the vehicle. After purchasing the vehicle from the [Petitioner], Mr. Wilkins drove away in the car with his girlfriend and brother, and law enforcement officers stopped him because the car had no license plate. The police then checked the car's VIN number and found it matched the VIN number of the car stolen the previous day from the I-Finance-Auto dealership. The officers arrested Mr. Wilkins, his girlfriend, and his brother. After giving a statement to the police and revealing the name of the man who sold him the car, Mr. Wilkins and his companions were released. In his statement, Mr. Wilkins named Eric Harris as the individual who sold him the car.

Two days after his release, the police compiled a photograph lineup, which included a photo of a man named Eric Harris, but neither Mr. Wilkins, nor his girlfriend, nor sister recognized anyone in the photo. A few days after that, the police processed the bill of sale given to Mr. Wilkins when he purchased the vehicle and found that fingerprints on the document matched the fingerprints of the [Petitioner]. Police then arranged a second photo lineup, which included a photo of the [Petitioner]. Mr. Wilkins, his girlfriend, and his sister each identified the [Petitioner] as the individual who sold Mr. Wilkins the car.

On September 25, 2014, the Shelby County Grand Jury charged the [Petitioner] with one count of theft of property valued at $1,000 or more but less than $10,000. *See* Tenn. Code Ann. § 39-14-103.

The jury convicted the Petitioner, and the trial court imposed an eight-year sentence. The Petitioner appealed. This court affirmed the trial court's judgment, and the Tennessee Supreme Court denied the Petitioner's application for permission to appeal. *State v. Philemon Alexander*, W2015-02494-CCA-R3-CD, 2016 WL 554001, at *1, (Tenn. Crim. App., at Jackson, Sept. 28, 2016), *perm. app. denied* (Tenn. Jan. 23, 2017).

The Petitioner timely filed a petition for post-conviction relief. In his petition, the Petitioner raised various claims of ineffective assistance of counsel. The Petitioner alleged that Counsel: (1) inadequately cross-examined State witnesses; (2) failed to call witnesses helpful to the defense; (3) failed to properly question the photographic line-up and in-court identifications; and (4) failed to hire an expert witness to test fingerprints on

the bill of sale. Additionally, the Petitioner asserted that the cumulative error of Counsel's performance constituted deficient performance causing him prejudice. The post-conviction court conducted an evidentiary hearing during which the Petitioner presented his own testimony, and the State presented the testimony of the Petitioner's trial attorney ("Counsel").

The Petitioner testified that Counsel met with him at court appearances and never met with him at the jail during his incarceration. Counsel conveyed the State's six-year offer, but the Petitioner declined based upon his belief in his innocence.

The Petitioner described the trial strategy as focusing on identification. He believed that the photographic line-up was suggestive and wanted Counsel to subpoena the officer who compiled the line-up. The Petitioner explained that Sergeant Preston had testified at trial that ten of the thirteen prints found on the bill of sale matched the Petitioner's print. The Petitioner believed this was inconsistent with trial testimony that the prints taken from the Mustang were unidentifiable. He stated that Counsel agreed to subpoena "the first latent print examiner . . . to see . . . what happened to everybody else['s] fingerprints" because Mr. Wilkins's prints were not found on the bill of sale. He believed that this would evidence "tampering" or some "kind of misconstrued evidence." The Petitioner believed that the preliminary hearing transcript would have brought this issue "into further light." Counsel, however, failed to obtain the preliminary hearing transcript, and the Petitioner believed this was deficient performance.

The Petitioner testified that he also wanted Counsel to subpoena Jonathan Scruggs, the co-owner of the used car lot. He contended that Mr. Scruggs was present when the suspect left the car lot in the Mustang. The Petitioner contended that he and Counsel "agreed" to subpoena Mr. Scruggs, and Counsel failed to do so without offering the Petitioner an explanation.

The Petitioner also contended that Counsel did not adequately cross-examine Mr. Wilkins, the victim, at trial. Mr. Wilkins had provided the police with a description of the man who sold him the Mustang. Mr. Wilkins described the suspect as being six feet tall. The Petitioner, however, is five feet seven inches tall. The Petitioner believed that better investigation would have revealed someone who was six feet tall and whose fingerprints were on the bill of sale. The Petitioner believed that the identification in his case was "mistaken identification."

On cross-examination, the Petitioner recalled that Counsel had cross-examined Mr. Wilkins about discrepancies in his description of the suspect; however, the Petitioner did not feel the questioning was sufficient. The Petitioner agreed that Counsel also questioned the eye witnesses about the lighting conditions at the time of the transaction,

but the Petitioner did not think this line of questioning was relevant. The Petitioner also agreed that Counsel questioned Ms. Yang, Mr. Wilkins's girlfriend, about her identification of the Petitioner and that she had testified she was certain of her identification of the Petitioner. The Petitioner recalled Counsel questioning Officer Preston at trial about the four unidentified prints found on the Mustang, but the Petitioner explained that Counsel did not question Officer Preston in the manner in which they had agreed.

The Petitioner testified that he wanted Counsel to subpoena the "first latent print examiner" because this examiner "first tested" the bill of sale and the four unidentified prints on the Mustang. He also wanted Counsel to subpoena the officer who created the photographic line-up. He maintained that issuing subpoenas for these individuals "was all part of our agreement." He reiterated that he also wanted Counsel to subpoena Mr. Scruggs and that Mr. Scruggs would have "showed [his] innocence" because Mr. Scruggs did not "identify anyone" at the preliminary hearing. He agreed that at trial Mr. Wilkins, Ms. Wilkins, and Ms. Yang all identified him as the individual from whom Mr. Wilkins purchased the Mustang. He then expressed his frustration that the witnesses were not called in the order that he and Counsel had discussed in preparing for trial. The Petitioner stated that he was unaware that the State decided the order of witnesses for presenting the State's proof.

Counsel testified that he had been practicing law for almost thirty-eight years and his practice was predominantly criminal law. He estimated that he had tried two or three hundred cases. Counsel referenced the Petitioner's case as "a Craigslist case." He summarized the case, saying there was an advertisement placed on Craigslist, "a meeting of the parties, there was a vehicle that was sold, there was a bill of sale that took place." The Petitioner's "fingerprints [were] on the bill of sale and there were multiple identifications of [the Petitioner] by all the parties involved."

Counsel testified that the Petitioner wanted him to file motions to suppress witnesses' statements. Counsel explained to the Petitioner "multiple times" that this was not possible. Counsel agreed with the Petitioner's testimony that they met "in back" at court appearances. He said that the Petitioner also wrote numerous lengthy letters throughout Counsel's representation, and Counsel responded to every letter. Counsel said that the Petitioner went through the discovery "line by line, page by page," and Counsel "tried to answer as best I could" everything the Petitioner referenced in the discovery. He described most of the Petitioner's inquiries as "a fishing expedition" with no legal or factual basis. Counsel stated that no trial strategy was developed because the Petitioner would not make a decision with regard to the State's offer or proceeding to trial.

Counsel testified that he had difficulty communicating with the Petitioner because the Petitioner believed he knew the law. For example, the Petitioner was focused on suppressing the witness statements based upon a Fourth Amendment violation. The Petitioner wanted Counsel to assert that the witnesses were coerced into giving the statements. Counsel attempted to explain that the Petitioner did not have standing to assert a violation on the witnesses' behalf but was unable to dissuade the Petitioner.

Counsel testified that he reviewed the photographic line-up containing the Defendant's photograph and found nothing suggestive. Counsel confirmed that, had the line-up been suggestive, he would have pursued a motion to suppress the identification; however, the Petitioner was not interested in suppressing the identification, he wanted to suppress the witnesses' statements. Counsel reiterated that there was no legal basis to challenge the witness statements.

Counsel testified that he reviewed the letters and other items the Petitioner sent him and "tried [his] best to explain" why he could not legally pursue the issues the Petitioner identified. About one such issue, Counsel explained that Officer Preston, who had forty-one years of experience as a print examiner, testified about the fingerprint analysis in this case. Counsel found nothing in his investigation of the fingerprints to indicate there was any reason to employ an expert witness to challenge the fingerprint examinations and Officer Preston's testimony. He explained that the identification of the Petitioner as a possible suspect and the photographic line-up were developed based upon the results of the fingerprint analysis of latent prints recovered from the bill of sale. He found no basis to challenge the fingerprint analysis of the bill of sale latent prints but that he did cross-examine Officer Preston about the unidentified prints recovered from the Mustang.

Counsel testified that his cross-examination of the eye-witnesses in this case included questioning about inconsistencies between their description of the suspect to the police and the Petitioner's actual appearance. Even so, three eye-witnesses provided "strong identification," testifying that they were "a hundred percent [sure] that it was [the Petitioner]."

On cross-examination, Counsel testified about his relationship with the Petitioner. He stated that he "tried [his] best" to talk with the Petitioner but that the two "did not get along." He confirmed that the Petitioner threatened him toward the end of his representation. Counsel testified that he never requested to withdraw because he had no basis for removal from the case. He agreed that the Petitioner asked for a copy of the preliminary hearing transcript. Counsel requested a copy of the "preliminary hearing tape" but never received it. Counsel asked the Petitioner about the relevance of the

preliminary hearing transcript, and the Petitioner failed to explain what benefit the transcript would provide to his defense at trial.

After hearing this evidence, the post-conviction court issued a written order denying relief. It is from this judgment that the Petitioner appeals.

## II. Analysis

For the first time on appeal, the Petitioner asserts that Counsel failed to communicate with the Petitioner. Broadly consistent with the allegations in his petition, he attacks the adequacy of Counsel's investigation and preparation for trial and maintains his cumulative error claim. The State responds that the post-conviction court properly denied relief. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2018). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2018). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)). A post-conviction court's factual findings are subject to a *de novo* review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely *de novo* review by this Court, with no presumption of correctness. *Id.* at 457.

### A. Ineffective Assistance of Counsel

The Petitioner claims that he was denied his Sixth Amendment right to representation because Counsel's performance was deficient and resulted in prejudice to the Petitioner. Specifically, he asserts that Counsel failed to subpoena witnesses beneficial to his defense and failed to challenge the photographic line-up and fingerprint evidence. The State responds that the Petitioner has not proven his allegations by clear and convincing evidence.

Initially, we address the Petitioner's allegation about Counsel's lack of communication. Issues not presented in the post-conviction petition may not be raised

for the first time on appeal. *Cone v. State*, 747 S.W.2d 353, 356 (Tenn. Crim. App. 1987). Accordingly, the allegation of ineffective assistance of counsel based upon lack of communication is waived. Waiver notwithstanding, the record does not support the Petitioner's allegation that Counsel failed to communicate with the Petitioner to such a degree that Counsel's representation was deficient and the Petitioner was prejudiced by it. We now consider each of the Petitioner's remaining allegations in turn.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been

ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "'The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

As we review each of the Petitioner's claims we are mindful that all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon*, 18 S.W.3d at 156. With this guiding principle in mind, we begin with the post-conviction court's findings with regard to Counsel's representation.

*Potential Defense Witnesses*

As to the Petitioner's allegation that Counsel failed to call potential witnesses, the post-conviction court found:

> The [P]etitioner suggested that his attorney should have called as witnesses 1) an unnamed print examiner who first "tested" the prints on the bill of sale and the stolen Mustang, 2) an unnamed officer who assembled the photographic lineup for identification, and 3) a Johnathan Scruggs, who was at the dealership when the car was taken. The [P]etitioner did not testify at the hearing as to how any of these witnesses would have helped him at trial, or as to what their testimony would have been, and did not call any of them at the hearing. To succeed on a claim of ineffective assistance of counsel for failure to call a witness at trial, a post-conviction petitioner should present that witness at the post-conviction hearing. *Black v. State*, 794 S.W.2d. 752, 757 (Tenn. Crim. App. 1990). "As a general rule, this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner." *Id.* This allegation fails for a lack of any proof of prejudice to the [P]petitioner.

The Petitioner did not present any proof at the post-conviction hearing, other than his own bare assertions, as to what the alleged witnesses might have testified to had they been called at trial. To obtain post-conviction relief, the Petitioner must prove that Counsel's failure to present a witness was prejudicial.

> [W]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, . . . the petitioner [must prove] that (a) a material witness existed and the witness could have been discovered but for counsel's neglect in his investigation of the case, (b) a known witness was not interviewed, (c) the failure to discover or interview a witness inured to his prejudice, or (d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner.

*Black*, 794 S.W.2d at 757. The post-conviction court could not safely rely upon the Petitioner's self-serving statements. Without the witnesses' testimony, it would be speculative to conclude that their testimony would have affected the outcome of the trial. Thus, the Petitioner has failed to prove this allegation of ineffective assistance of counsel by clear and convincing evidence.

### *Suggestive Photographic Line-up*

The Petitioner contends that the photographic line-up including the Petitioner's photograph was suggestive and Counsel was deficient for failing to challenge the photographic line-up. As to this issue, the post-conviction court found:

> In this case, the person who attempted to sell Mr. Wilkins the stolen car gave them the name Eric Harris, with a Mississippi driver's license. The police created and administered a photographic lineup using that man's picture, and no identification was made from it by any of the witnesses. Once the [P]etitioner's 10 fingerprints were discovered on the bill of sale, a new photo lineup was created with the petitioner's picture, resulting in his identification. [Counsel] testified at the hearing on this petition as follows:
>
> > Q. And with regard to the identification in this case, did you find any legal issue in which to challenge the identification?
> >
> > A. No, I did not. I looked at the photographic lineup. There was nothing suggestive about it, and I explained that to him. . . . There

- 9 -

was nothing there that would even raise an eyebrow that the - - the photographic lineup was in fact suggestive at all, period.

(Transcript of the Hearing, p. 49). [Counsel] testified that if he had found anything suggestive about it, he would have filed a motion to suppress identification. This court agrees with [Counsel]'s assessment. In addition, all three witnesses testified at trial that they were certain of their in-court identifications of the [P]etitioner, in addition to the 10 fingerprints of the petitioner found on the bill of sale. This allegation fails for a lack of proof of any deficient performance or prejudice to the [P]etitioner.

. . . .

[Counsel] had been practicing criminal law for over 30 years, had tried between 200 and 300 criminal jury trials, and had spent 5 years on the capital defense team of the Shelby County Public Defender's office handling death penalty cases. A careful reading of the transcript of the trial reveals that he did everything he could to create reasonable doubt about the identification of the [P]etitioner, but the three witnesses who testified that they were certain of their identification of the [P]etitioner, the span of time and close proximity they had in viewing him and his 10 fingerprints on the bill of sale were more than any skilled trial attorney could overcome.

The evidence does not preponderate against the post-conviction court's findings. Counsel testified at the hearing that he reviewed the photographic line-up and found nothing suggestive about the line-up. If he had noted anything worthy of challenge, he stated that he would have filed a motion to suppress the identifications; however, the Petitioner was not interested in suppressing the identifications but wanted to suppress the witnesses' statements. Counsel reviewed the line-up and, based upon his experience and knowledge of the law, he determined that there was no basis to challenge the line-up and no legal avenue through which to suppress the witnesses' statements to the police. The Petitioner has not provided any evidence that a motion to suppress the witnesses' identification would have prevailed. Accordingly, the Petitioner is not entitled to relief as to this issue.

*Fingerprint Analysis*

As to the Petitioner's contention that Counsel's failure to employ a fingerprint expert constituted deficient performance and caused prejudice to him at trial, the post-conviction court found:

- 10 -

The [P]etitioner did not call any such expert at the hearing on this petition to testify as to any shortcomings of the two fingerprint experts who were called at trial, and suggests no testimony that would have been given by any such witness that might have helped his cause at trial, or that any particularized need could have been shown to have obtained any funds for such an expert pursuant to Supreme Court Rule 13. [Counsel] testified at the hearing on this petition that [the Petitioner] told [Counsel] that he had in fact handled the bill of sale when some people handed it to him during an argument about the car while he was cutting hair. [Counsel] also testified that he saw no basis at all for challenging the prints on the bill of sale.

As noted previously in this opinion, when a petitioner claims that trial counsel failed to interview or present a witness in support of his defense, the appellant should present that witness at the evidentiary hearing. *Black*, 794 S.W.2d at 757. This court will not speculate to what a potential witness may have testified. At the post-conviction hearing the Petitioner did not present the testimony of any fingerprint expert or any evidence as to how the testimony of a fingerprint expert would have benefitted him at trial. Accordingly, the Petitioner has failed to prove this allegation of ineffective assistance of counsel by clear and convincing evidence.

## B. Cumulative Error

Finally, the Petitioner asserts that he is entitled to post-conviction relief due to the cumulative effect of Counsel's errors. We recognize that, while individual errors may not necessitate relief, the combination of multiple errors may necessitate reversal of a conviction in order to ensure a defendant receives a fair trial. *State v. Zimmerman*, 823 S.W.2d 220, 228 (Tenn. Crim. App. 1999). Nevertheless, having found no error in Counsel's representation of the Petitioner, we cannot conclude, as the Petitioner urges, that Counsel's conduct amounted to "cumulative error" depriving the Petitioner of his right to a fair trial. *See id*. Consequently, we conclude the Petitioner is not entitled to relief on this issue.

## III. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the post-conviction court properly denied post-conviction relief. Accordingly, we affirm the judgment of the post-conviction court.

_____

ROBERT W. WEDEMEYER, JUDGE